# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LAURENT DOCKERY and
ODILIA DOCKERY,

      Plaintiffs,

v.                                      No. 1:19-CV-0190-RB-GJF

ALLSTATE INSURANCE COMPANY,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiffs' Motion for Reconsideration of Memorandum Opinion and Order and Request for Certification to the New Mexico Supreme Court. (Doc. 26.) Jurisdiction arises under 28 U.S.C. § 1332.

Plaintiffs' two vehicles were stolen by unknown tortfeasors. The cars were recovered but suffered physical damage. Plaintiffs received compensatory compensation from their insurer, Allstate Insurance Company, for loss of use and physical damage to the vehicles. But in an untested turn of events, Plaintiffs sought payment from their Uninsured Motorist Coverage for punitive damages against the unknown tortfeasors. Defendant argued in its Motion for Summary Judgment that punitive damages were not recoverable from the Uninsured Motorist Coverage because (1) the tortfeasors are unknown and (2) the vehicles are not uninsured vehicles. (Doc. 14). The Court agreed and entered its Final Order in favor of Defendant and dismissed the case with prejudice. (Doc. 24). Now Plaintiffs move the Court to reconsider its judgment and argue that the Court overlooked and/or misconstrued controlling law. Having considered the submissions of counsel and relevant law, the Court will **DENY** Plaintiffs' motion.

1

## I.     Factual and Procedural Background[1]

Plaintiffs' 2014 Dodge Dart and 2016 Volkswagen Passat were stolen by unknown tortfeasors sometime on March 5 or March 6, 2017. (Doc. 16 at 2 ¶ 1.) They were recovered with significant property damage, and both vehicles were insured by Allstate (Policy No. 829505005). (*Id.* ¶¶ 2, 3.)

Plaintiffs' claims in this case arise from their claim for punitive damages under their uninsured motorist ("UM") coverage and Allstate's handling of those punitive damages claims. (*Id.*) The policy provided auto collision insurance for Plaintiffs' vehicles, which paid for "direct and accidental loss to your insured auto . . . from a collision." (*Id.* ¶ 4.) The policy also provided comprehensive coverage that covered loss caused by theft, as well as auto theft coverage that paid for "direct and accidental loss to your insured auto caused by theft or larceny." (*Id.*) Allstate asserts they paid for the theft under the comprehensive coverage. The comprehensive and collision provisions included coverage for auto theft. (Doc. 14-2 at 5 ("We will pay for direct and accidental loss to your insured **auto** caused by theft or larceny.").) The comprehensive insurance under the Allstate policy does not cover punitive damages. (Doc. 19 at 5 ¶ 10.) The policy defines an insured auto as "a motor vehicle described on the Policy Declarations." (*Id.* ¶ 6.) The policy defines an **uninsured** auto, in relevant part, as "a motor vehicle which has no property damage liability bond or policy in effect at the item of the accident," or "a motor vehicle covered by a property damage liability bond or policy which doesn't provide at least minimum financial security requirements specific in the financial responsibility law of New Mexico." (*Id.* ¶ 7.) However, the policy also provides that an "uninsured auto is not: (1) a motor vehicle which is insured for Liability Coverage under Part 1 of this policy." (*Id.* ¶ 8.) Plaintiffs' vehicles are listed as insured under Part 1. (*Id.*)

---

[1] The Court outlined this matter's factual background in its January 6, 2020 Memorandum Opinion and Order and recounts the same facts below. (*See* Doc. 24 at 1–3.)

The UM coverage also excludes property damage that is paid by other insurance. (*Id.* ¶ 9.) The policy provided liability coverage for an insured person, which it defines as a named insured or any other person getting into an insured vehicle only "with [an insured's] permission." (Doc. 19 ¶ 5.)

Following the settlement, Allstate agreed to "continue to adjust Laurent Dockery's and Odilia Nino's separate claims for the punitive damages" stemming from the two thefts. (*Id.* ¶ 7.) Allstate acknowledged that "some portion [of the settlement funds of $45,000.00] is for compensatory damages as a basis for punitive damages." (*Id.* at 5 ¶ 8.) The settlement agreement does not mention the coverage under which the settlement would be paid. (*Id.* ¶ 9.) Allstate chose to pay the damages under the comprehensive coverage. (*Id.*) In a letter sent on May 23, 2018, Allstate denied Plaintiffs' punitive damages claims because (1) the vehicles were insured at the time of the thefts; and (2) the identity of the tortfeasors is unknown. (*Id.* ¶¶ 11, 12.)

Plaintiffs asserted various claims, and Defendant moved for summary judgment. Plaintiffs moved for partial summary judgment on the issue of whether Allstate wrongfully refused to pay punitive damages from the UM coverage. The Court granted Defendant's motion. (Doc. 24.) Plaintiffs now moves for reconsideration of the Court's Opinion. (Doc. 26.)

## II.    Legal Standard

Whether a motion for reconsideration is reviewed under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure is not solely dependent on the timing of filing, but also "on the reasons expressed by the movant." *Patterson v. Nine Energy Serv., LLC*, 355 F. Supp. 3d 1065, 1105 (D.N.M. 2018) (quoting *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011)). If "the motion involves 'reconsideration of matters properly encompassed in a decision on the merits,' a court considers the motion under rule 59(e)."

*Id.* (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1323–24 (10th Cir. 1997) (internal quotation marks omitted). "In other words, if the reconsideration motion seeks to alter the district court's substantive ruling, then it should be considered a rule 59 motion and be subject to rule 59's constraints." *Id.* (citing *Phelps*, 122 F.3d at 1324).

Juxtaposed with rule 59, rule 60 allows the court to

relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
 (1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

*Id.* at 1106 (quoting Fed. R. Civ. P. 60(b)).

Plaintiffs assert in their reply brief that their motion should be considered under Rule 60(b). But because they filed their motion within the 28-day period provided for in Rule 59(b), and because the motion "involves 'reconsideration of matters properly encompassed in a decision on the merits,'" it is properly considered under Rule 59(e). *See Patterson*, 355 F. Supp. 3d at 1106. (citing *Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005) (internal quotation marks omitted). Accordingly, the Court will analyze the motion under Rule 59(e). *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (stating that "[t]he Federal Rules of Civil Procedure do not recognize a motion to reconsider[,]" so parties seeking such relief must file a motion under either Rule 59(e) or Rule 60(b)) (internal quotation marks omitted)); *see also Ysais v. Richardson*, 603 F.3d 1175, 1178 n.3 (10th Cir. 2010) (noting that as of December 1, 2009, "a motion to alter or

amend a judgment may be filed within 28 days after the entry of judgment"; previously parties had to file within ten days).

Rule 59(e) has a narrow scope. "A motion for reconsideration under rule 59(e) is an 'inappropriate vehicle[ ] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.'" *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1218 (D.N.M. 2014) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (quoting *Servants of Paraclete*, 204 F.3d at 1012 (internal quotation marks omitted)). "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete*, 204 F.3d at 1012 (citing *Van Skiver*, 952 F.2d at 1243). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Jarita Mesa*, 58 F. Supp. 3d at 1218 (citing *Van Skiver*, 952 F.2d at 1243). Because of this high standard, "[a] district court has considerable discretion in ruling on a motion to reconsider under rule 59(e)." *Id.* (citing *Phelps,* 122 F.3d at 1324).

## III.   Discussion

Plaintiffs allege four points of error with the Court's January 6, 2020 Opinion: (1) the Court's determination that Plaintiffs' vehicles were insured and thus not entitled to uninsured motorist coverage; (2) the Court's determination that punitive damages cannot be awarded when a tortfeasor is unknown; (3) the dismissal of Plaintiffs' claims for punitive damages with prejudice; and (4) the Court's dismissal of Plaintiff's extra-contractual claims. (Doc. 26 at 5–16.)

**A.  The Court's determination that Plaintiffs' vehicles were insured stands.**

Because this Court is sitting in diversity jurisdiction, the substantive law governing this case is that of New Mexico. *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017). "When the federal courts are called upon to interpret state law, the federal court must look to rulings of the highest state court . . . ." *Nelson v. United States*, 915 F.3d 1243, 1248 (10th Cir. 2019) (quotation omitted); *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). But as the Court stated in its Opinion, "there is no New Mexico Supreme Court precedent on whether a stolen vehicle is an 'uninsured auto' under the Uninsured Motorist Act (UMA)." (Doc. 24 at 8.) Therefore, the Court must "endeavor to predict how that high court would rule." *Nelson*, 915 F.3d at 1248 (quotation omitted). The Court does this by "seek[ing] guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Patterson v. Powder Monarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)). "The Court begins its analysis 'by giving proper regard to relevant rulings by other courts of the state because each ruling is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Ammons v. Sentry Ins. Co.*, 431 F. Supp. 3d 1280, 1291 (D.N.M. 2019) (quoting *Beltran v. AuPair Care, Inc.*, 907 F.3d 1240, 1251 (10th Cir. 2018)).

Plaintiffs argue that the Court's ruling conflicts with New Mexico law because of a recent order by the Second Judicial District Court of New Mexico. *See Padilla v. Gov't Emps. Ins.*, D-202-CV-2016-02675, Order Den. GEICO's Mot. Summ. J. ("*Padilla* Order") (N.M. 2d Jud. Dist.

Ct., Mar. 4, 2020). Therefore, the Court must analyze whether there has been an "intervening change in controlling law." Though *Padilla* "is a datum for ascertaining state law[,]" *see Ammons*, 907 F.3d at 1291, it is not conclusive. If the Court is convinced by "other persuasive data," it has no need to reconsider the issue. Giving the *Padilla* court proper regard, the Court is not convinced that this lone decision dictates that the New Mexico Supreme Court would hold a stolen vehicle as "uninsured."

In *Padilla*, the plaintiff's truck was stolen and found destroyed. *Padilla*, D-202-CV-2016-02675, Mot. Summ. J. at 5 (N.M. 2d Jud. Dist. Ct., May 20, 2019). Plaintiff filed an insurance claim, which the insurer denied. Plaintiff then filed a claim for UM coverage, but the claim was also denied. *Id*. at 5–7. The insurers filed a motion for summary judgment. The state district court denied the motion, holding that the stolen "pickup was uninsured for purposes of UM coverage . . . ." *Padilla* Order at 1 ¶ 2. Plaintiffs use *Padilla* to bolster their assertion that "New Mexico courts are particularly apt to strike exclusionary provisions in UM insurance policies because 'public policies [related to the UMA] warrant application of a qualitatively different analysis from that appropriate for other insurance cases.'" (Doc. 26 at 5 (quoting *Britt v. Phoenix Indem. Ins.*, 907 P.2d 994, 998 (N.M. 1995)).) While this may be true, *Padilla* is distinguishable: there, the plaintiff was denied ***both*** its insurance claims and its UM coverage. Here, Allstate ***approved*** Plaintiffs' insurance claims and paid Plaintiffs $45,000. In *Padilla*, the plaintiff was completely excluded from coverage. That is not the case here.

This distinction is crucial. If the Court expanded the definition of "uninsured," Plaintiffs would not only receive payment from their claims, but they would also receive payment from UM coverage. This would frustrate the purpose of the UMA and essentially allow the Plaintiffs to "double-dip." *See also Mountain State Mut. Cas. Co. v. Martinez*, 848 P.2d 527, 529 (N.M. 1993)

(analyzing UM coverage in terms of avoiding unnecessary duplication of coverage that would increase the cost of UM coverage); *Mortensen v. Liberty Mut. Ins.*, No. CV 18-1121 KK/SMV, 2019 WL 1571730, at *4 (D.N.M. Apr. 11, 2019) (loss of stolen cars not covered under uninsured motorist statute). As the Court noted, "Plaintiffs were paid compensatory damages under their comprehensive and collision insurance, which expressly covered damages from auto theft." (Doc. 24 at 7.) The UMA was "designed to expand insurance coverage to protect the public from damage or injury caused by other [motorists] who were not insured and could not make the impaired party whole." (*Id.* at 6 (quoting *Marckstadt v. Lockheed Martin Corp.*, 228 P.3d 462, 468 (N.M. 2010)).) *See also Phoenix Indem. Ins. Co. v. Pulis*, 9 P.3d 639, 642 (N.M. 2000). Therefore, "[e]xpanding the uninsured motorist coverage to include damages as a result of the theft of the vehicle would be contrary to the language and purpose of [the] uninsured motorist statute." (Doc. 24 at 7 (citations omitted).) Since "federal courts are generally reticent to expand state law without clear guidance from [the] state's highest court" and "it is not [the] federal court's place to expand state law beyond bounds set by [the] highest court of [the] state," the Court's finding that Plaintiffs' vehicles were "insured" stands. *See* 21 Charles Alan Wright & Arthur R. Miller, 19 Fed. Prac. & Proc. Juris. § 4507 (3d ed. 1998) (citing *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018)).

Plaintiffs also maintain that the Court relied on a section of the N.M Admin Code—13.12.3.14(C)(3)(a)-(b) — which "the New Mexico Supreme Court has already ruled . . . [as] invalid." (Doc. 26 at 7.) Since Plaintiffs assert that the Court's ruling was "invalid," the court must analyze whether it committed a "clear error" justifying reconsideration. "[A] trial court's decision will not be disturbed unless . . . [it] made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Derma Pen, LLC v. 4EverYoung Ltd.*, 737 F. App'x 396,

401 (10th Cir. 2018) (quoting *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235 (10th Cir. 2001)). A trial court's decision will not be altered unless it was "arbitrary, capricious, whimsical, or manifestly unreasonable . . . ." *Id.* (quoting *Wright*, 259 F.3d at 1236). "The court usually must have a clear conviction of error or believe that the final judgment was dead wrong before it will alter or amend a judgment on the basis of manifest error." *Brenner v. Bd. of Cty. Comm'rs (Councilors) for Cty. of Los Alamos*, No. CV 18-478 KG/KBM, 2020 WL 264405, at *2 (D.N.M. Jan. 17, 2020) (quotation and quotation marks omitted).

The Court did commit a clear error because it did not rely on N.M Admin Code 13.12.3.14(C)(3)(a)-(b) to reach its conclusion. Though the Court referenced 13.12.3.14(C)(3)(a)-(b) in its holding that "[t]he policy comports with the uninsured motorist statute and implementing regulations," these provisions were not the crux of the Court's conclusion. (*See* Doc. 24 at 7.) As discussed above, the Court based its conclusion on the purpose of the UMA. Since the Court's decision was based on reasoning independent of 13.12.3.14(C)(3)(a)-(b), Plaintiffs have failed to establish that the Court acted with "arbitrary, capricious, whimsical, or manifestly unreasonable judgment" in coming to its conclusion. *See Derma Pen*, *LLC*, 737 F. App'x at 401.[2] Therefore, because of the preceding arguments regarding the purpose of the UMA, the Court declines to accept Plaintiffs' argument that their vehicles were "uninsured."

Lastly, Plaintiffs argue that the Court's January 6, 2020 Opinion does not address certain cases showing that New Mexico courts are particularly apt to strike exclusionary provisions in UM insurance policies. (Doc. 26 at 6–8.) But all three of the cases Plaintiffs rely on in their motion to reconsider—*Boradiansky*, *Padilla*, and *Marin*—are more than ten years old and were readily available to Plaintiffs for briefing. As discussed above, "[i]t is not appropriate to revisit issues

---

[2] Plaintiffs state that the Court ignored the "next sentence" in *Arnold*. (Doc. 28 at 8.) The Court fully addressed the holding in *Arnold* and finds that this is an attempt to reargue an issue that the Court has already decided.

already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete*, 204 F.3d at 1012 (citing *Van Skiver*, 952 F.2d at 1243). Therefore, because of the preceding arguments regarding the purpose of the UMA, the Court declines to accept Plaintiffs' argument that their vehicles were "uninsured."

### B.  Plaintiffs are not entitled to punitive damages.

The Court is not persuaded that Plaintiffs are entitled to punitive damages. In *Ammons*, United States Magistrate Judge Steven C. Yarbrough stated "[t]hat an award of punitive damages against an unknown tortfeasor cannot achieve the [UMA's] desired goals . . . ." 431 F. Supp. 3d at 1298. The *Ammons* court came to this conclusion by looking at the rationale of both *Stinbrink v. Farmers Ins. Co. of Ariz.*, 803 P.2d 664 (N.M. 1990) and *Jaramillo v. Providence Wash. Ins. Co.*, 871 P.2d 1343 (N.M. 1994). 431 F. Supp. 3d at 1296. "In *Jaramillo*, the New Mexico Supreme Court held that punitive damages cannot be recovered against the estate of a deceased tortfeasor." *Id.*

> The [*Jaramillo*] court explained that, [i]n New Mexico, the purpose of punitive damages is two-fold: Such additional damages are awarded for the *limited purposes* of punishment and to deter others from the commission of like offenses. . . . The purpose of requiring an insurer to provide UM coverage is to be sure that an injured insured is compensated for injuries even when the tortfeasor is financially irresponsible.  In the past, when holding that insurance policies may cover punitive damages, [the New Mexico Supreme Court has] relied on the principle that the purpose of punitive damages (to punish the tortfeasor) is not diluted by requiring the insurance company to pay the damages because the insurer can always sue the tortfeasor for recovery of the damages. When the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to recover those damages.

*Ammons*, 431 F. Supp. 3d at 1296 (quoting *Jaramillo*, 871 P.2d at 1351) (quotation marks omitted). Though *Jaramillo* applied to deceased tortfeasors, its rationale applies here, to unknown tortfeasors, as well. "While the tortfeasor is unknown, no possibility of collecting against that

tortfeasor exists. And, if the identity of the tortfeasor is discovered during the pendency of the lawsuit, the plaintiff can always move to amend his or her complaint." *Ammons*, 431 F. Supp. 3d at 1297.

Further, punitive damages will not achieve the UMA's goal of "covering the gap in compensation caused by an irresponsible tortfeasor who does not have legally mandated liability insurance." *Id*. The purpose of the UMA is to compensate; punitive damages are not meant to compensate. *Id*.; *see also Jaramillo*, 871 P.2d at 1351; *Madrid v. Marquez*, 33 P.3d 683, 685 (N.M. Ct. App. 2001) (stating that "[p]unitive damages punish the wrongdoer and serve as a deterrent; the award does not measure a loss suffered by the plaintiff") (citations omitted). Accordingly, punitive damages are not the vehicle to further the goals of the UMA.

"True, *Stinbrink* noted 'punitive damages are as much a part of the potential award under the uninsured motorist statute as damages for bodily injury.'" *Ammons*, 431 F. Supp. 3d at 1297 (quoting *Stinbrink*, 803 P.2d at 665). "But this statement appears to derive from the court's immediately preceding recognition that the victim of an uninsured tortfeasor might be legally entitled to recover punitive damages from that tortfeasor." *Id*. (citing *Stinbrink*, 803 P.2d at 665). "In any event, to the extent *Stinbrink* opened the door to an argument that the victim of an uninsured tortfeasor could recover punitive damages under his or her UM policy even where the victim could obtain no judgment against the tortfeasor, *Jaramillo* shut that door four years later." *Id*. at 1297–98 (citing *Jaramillo*, 871 P.2d at 1351). Thus, Plaintiffs have not established that reconsideration is warranted on the issue of their entitlement to punitive damages.

## C. Plaintiffs' claims are dismissed with prejudice.

Since summary judgment is an adjudication on the merits, there is no need to revisit the Court's determination that the case be dismissed with prejudice. *Goichman v. City of Aspen*, 859

F.2d 1466, 1471 n .13 (10th Cir. 1988); *see also Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987) ("A grant of summary judgment resolves the issue on the merits and thus is with prejudice."). As Plaintiffs have advanced no authority to establish that a dismissal without prejudice is appropriate, the Court's dismissal with prejudice stands.

**D.  The Court's dismissal of Plaintiffs' extra-contractual claims stands.**

Plaintiffs allege an "intervening change in the controlling law" regarding their extra-contractual claims necessitating reconsideration by the Court. The Court disagrees. Plaintiffs stated in their response to Defendants' Summary Judgment Motion, "even if this Court determines that Allstate's denial of punitive damages was proper, . . . Allstate did not act reasonably in its denial of the claims given the events leading up to the denial." (Doc 19 at 19.) Plaintiffs make essentially the same argument in their Motion for Reconsideration, but they cite different case law: *Haygood v. United Servs. Auto Ass'n*, 453 P.3d 1235 (N.M. Ct. App. 2019). (*See* Doc. 26 at 16–17.) *Haygood* reiterates the law set out in *O'Neel v. USAA Ins.*, 41 P.3d 356 (N.M. Ct. App. 2002), which Plaintiffs cited in previous briefings. *See Haygood*, 453 P.3d at 1241–42 (stating that the *O'Neel* court "explained that a record may 'contain[ ] evidence to support a finding of bad faith . . . based on conduct separate from [the insurer's] refusal to pay'") (quoting *O'Neel*, 41 P.3d at 359). As outlined above, "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete*, 204 F.3d at 1012 (citing *Van Skiver*, 952 F.2d at 1243). Therefore, *Haygood* is not an "intervening change in controlling law." The Court's holding stands.

**IV.  The Court denies Plaintiffs request for certification to the New Mexico Supreme Court.**

Finally, Plaintiffs seek to certify the issue of whether punitive damages are available when the tortfeasor is unknown to the New Mexico Supreme Court. (Doc. 26 at 17–18.) The Court will

deny the motion to certify. Yes, the New Mexico Supreme Court "may answer a question of law certified to it . . . if the answer may be determinative of an issue in pending litigation . . . and there is no controlling appellate decision, constitutional provision or statute of this state." N.M. Stat. Ann. § 39-7-4. But "[t]he decision to certify rests in the sound discretion of the federal district court." *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). "Under the diversity statutes, federal courts have a duty to decide questions of state law, even if the issues are difficult or uncertain." *Bonham v. Indem. Ins. Co. of N. Am.*, 507 F. Supp. 2d 1196, 1207 (D.N.M. 2007) (citing *Copper v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998)). "Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir. 1988) (citation omitted).

Ultimately, in this case, the timing of the certification is very important. Courts generally "will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." *Arnold v. Farmers Ins. Co. of Ariz.*, 827 F. Supp. 2d 1289, 1294 (D.N.M. 2011) (quoting *Massengale v. Okla. Bd. of Exam'rs in Optometry,* 30 F.3d 1325, 1331 (10th Cir. 1994)); *see also Armijo.,* 843 F.2d at 407 (stating that "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law" and denying motion to certify in part because "the plaintiff did not request certification until after the district court made a decision unfavorable to her") (citation omitted). Here the Plaintiffs delayed seeking certification until after the Court's ruling on the party's motions for summary judgment. Plaintiffs had notice regarding the ambiguous nature of New Mexico law on whether punitive damages are available when the tortfeasor is unknown at the time they responded to Allstate's motion for summary judgment. Consequently, the Court does

not find that the purpose of the certification would be well served by granting Plaintiffs' motion. *See United States v. Jones*, 512 F. Supp. 2d 1193, 1195 (D. Kan. 2007). "When used properly, certification 'saves time, energy, and resources, and helps build a cooperative judicial federalism.'" *Boyd Rosene & Associates. v. Kan. Mun. Gas Agency*, 178 F.3d 1363, 1365 (10th Cir. 1999) (quoting *Lehman Bros.*, 416 U.S. at 390–91). At this stage, certification to the New Mexico Supreme Court "would not serve these important policy interests, as the Court and parties have already expended time and resources in briefing and determining the issues which are likely to be repeated and resolved in the near future in state court." *See Jones*, 512 F. Supp. 2d at 1195. Therefore, certification is denied.

## V.      Conclusion

The Court has reviewed the facts and the law in a light most favorable to Plaintiffs and finds that they have failed to establish that the Court previously misapprehended the facts, Plaintiff's position, or the controlling law.

**THEREFORE**,

**IT IS ORDERED** that Plaintiffs' Motion for Reconsideration of Memorandum Opinion and Order and Request for Certification to the New Mexico Supreme Court (Doc. 26) is **DENIED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE